IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Marci Fish,<br><br>         Plaintiff,<br><br>    v.<br><br>CVS Pharmacy, Inc. and A-Team Services, Inc.,<br><br>         Defendants. | C/A No. 3:16-cv-00099-CMC<br><br>Opinion and Order Denying Motion for Summary Judgment |

Through this action, Plaintiff, Marci Fish ("Plaintiff"), seeks damages from CVS Pharmacy, Inc. ("CVS") for injuries suffered when she fell over sandbags stacked outside the entrance of a CVS store.[1] The matter is before the court on CVS's motion for summary judgment, which relies on the open and obvious nature of the stacked sandbags. For reasons set forth below, the motion for summary judgment is denied.

**STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn

---

[1] Defendant A-Team Services, Inc. was dismissed without prejudice on February 15, 2017. *See* ECF No. 44 (stipulation of dismissal).

therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

(b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

**FACTS**

On October 5, 2015, Plaintiff visited the CVS store on Hardscrabble Road in Columbia, South Carolina. Jarrod Washington dep. at 22, 23 (noting incident occurred on Monday October 5, 2015); *see also* Plaintiff dep at 35 (stating accident happened after the flood). Two days prior to Plaintiff's visit, sandbags were delivered to the CVS as a precautionary measure to avoid damage from heavy rains and anticipated flooding in the area. Washington dep. at 21-22 (stating sandbags were delivered on Saturday morning as precautionary measure); *see also* ECF No. 50-2 ("Record of Climatological Observations" reflecting rainfall in Columbia area of 1.48 inches on October 3, 2015, 8.78 inches on October 4, 2015, 5.05 inches on October 5, 2015, and .40 inches on October 6, 2016).

The sandbags were placed in front of the customer entrance at night and moved to the sides of the door when the store was opened. Cathy Lizotte dep. at 31-33 (CVS employee explaining sandbags had to be moved in order to open the doors, describing bags as being placed to the sides

2

of the door when the store was open, and indicating she may have moved the bags if she had to open or close the store, though she does not recall); Washington dep. at 29-30, 48 (stating sandbags were to the sides of the door, "not blocking the door directly" so he believed "they were fine where they were"); Amy Cox dep. at 41 (CVS employee explaining bags were stacked on top of each other against the wall "a good 3-4 inches away from [the] doors on both sides" of the entrance); *see also* Plaintiff dep. at 37-38 (describing accordion door at angled entrance). Though no flooding was occurring within the immediate area of the CVS at the time of Plaintiff's visit, the back room of the CVS had been flooded and it was not clear that all risk of flooding had passed. Washington dep. at 23, 48 (stating store was not actively flooding at the time of Plaintiff's fall), 64-65 (stating he "didn't know if the rain was going to stop or keep going" and sandbags were kept near where they would be needed because, at 50 pounds each, they were not easy to move); 73 (stating he understood from customers that there was "flooding within a half-mile of the store");74-75 (stating stock room in back of store flooded prior to the incident). The bags were made of clear plastic with large red and green writing. Washington dep. at 45 (addressing weight and difficulty of one person moving); ECF No. 50-1 (Reply Ex. 1, photograph).[2]

---

[2] Plaintiff identified the sandbags depicted in this photograph as the sandbags that caused her fall, though she could not say whether they were depicted as they were stacked at the time of her fall. Plaintiff dep. at 40, 60. Other witnesses testified that, while the photograph depicts the sandbags that were present, it does not depict the manner of stacking at the time of Plaintiff's fall. *See* Washington dep. at 27, 47 (identifying photograph as one he took of the sandbags, but stating he did not believe it was on the day of the incident); Cox dep. 42-43 (stating photograph showed sandbags that were present but did not show how they were positioned at time of Plaintiff's fall "[b]ecause they're all stacked on top of each other," rather than two on each side of the door); *compare* Plaintiff dep. at 39 (referring to a stack of *three* sandbags on each side of the door), *with* ECF No. 50-1 (showing a stack of *four or five* sandbags).

3

Plaintiff "distinctly remember[s] seeing [sandbags stacked] on the [far] side of the door as she entered. *Id.* at 38. She did not "recall seeing [sandbags] on the closer side." *Id.*; *see also id.* at 40 ("I don't remember seeing them on [the closer] side of the door as I walked in. . . . I just think I didn't notice."). Based on her observations after she fell, Plaintiff "believe[s] there were three [sandbags] on each side" of the door. *Id.* at 39.[3] Plaintiff concedes nothing prevented her from seeing the sandbags. *Id.* at 49.

When Plaintiff exited the store, she turned sharply to the right to avoid the possibility of running into anyone who might be coming from that direction. *Id.* at 40, 42, 55 (describing exit as a blind corner). When she did so, she tripped over the stack of sandbags she had not previously observed (on her right as exiting). *Id.* at 40. After Plaintiff fell, the store manager, Washington, "came out and the first thing he did is he said let me move these sandbags. I don't want anybody else to trip." Plaintiff dep. at 60. When asked whether the bags had moved when she tripped over them, Plaintiff conceded she did not know. Plaintiff dep. at 66-67. Washington testified he believed Plaintiff's fall moved one of the bags which he "stood [] back up and . . . put . . . closer to the wall." Washington dep. at 32.

Two CVS employees expressed at least some doubt whether the sandbags should have been left by the door. *See* Cox dep. at 44; Lizotte dep. at 38-39, 42). For example, when asked whether the bags should have been left by the door, Cox initially stated "No, I don't think so[.]" Similarly, in response to a hypothetical question, Lizotte agreed sandbags "should not be left outside the

---

[3] CVS employees testified there were two bags on each side of the door, for a total of four bags. Cox dep. at 41; Lizotte dep. at 34; *see also* ECF No. 50-1 (photograph of four to five bags). For purposes of this order, the court accepts Plaintiff's recollection of the number of bags as correct.

4

entry way" *if "there was no longer a threat of th[e] store flooding*[.]" Lizotte dep. at 38. While both witnesses' responses were qualified, they present some evidence store employees understood the sandbags posed a risk of harm.[4]

Plaintiff suffered injuries as a result of the fall, including exacerbating a preexisting injury to her arm that ultimately led to surgery and related complications. *Id.* at 50, 65-66; Richard Fish ("Mr. Fish") dep. at 23 (testifying Plaintiff "felt that [the injury to] her arm was significantly exacerbated" by the fall but did not realize the extent of the injury so did not seek medical attention until the Friday following the fall); Washington dep at 25 (reciting Plaintiff's contemporaneous description of her injuries).

## DISCUSSION

A merchant is not an insurer of its customers' safety, but does owe customers a "duty to exercise ordinary care to keep the premises in a reasonably safe condition." *Denton v. Winn-Dixie Greenville, Inc.*, 439 S.E.2d 292, 293 (S.C. Ct. App. 1993). To recover for injury caused by a foreign substance or object, a customer must show the merchant either placed the substance or object where it caused the injury or was on constructive or actual notice of the substance or object. *Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 729-30 (S.C. 2001) (upholding rule even though

---

[4] *See* Cox dep. at 44 (stating she wasn't sure whether more rain was forecast); Lizotte dep. at . 38, 40-43 ((1) stating, on direct examination, whether bags should be removed "[d]epends if it's before or after the flood," and she did not recall whether there was still a risk of flooding, (2) agreeing, on cross-examination, it was appropriate to leave the sandbags in place if there was still a chance of flooding, (3) indicating, on re-examination, sandbags should have remained near doors if there was still a chance of flooding but agreeing they "probably" should have been removed if "it was no longer raining and there were not waters close by"; (4) indicating, on re-cross-examination, that the flooding around October 5, 2015, was unusual, they did not know how severe it would be or when flooding would end, and it was appropriate to take precautions if any risk of flooding remained).

merchant's installation of self-serve drink machine with ice dispenser increased likelihood of water on floor). There is no issue of notice in this case because CVS was responsible for placement of the sandbags.

Even if the object itself is placed by the merchant, the merchant cannot be held liable if the customer, exercising "reasonable care for his own safety" would likely expect and see the object. *Denton*, 439 S.E.2d. 294 (holding merchant was entitled to judgment as a matter of law where customer fell over a six to eight inch high divider used to corral grocery carts in parking lot despite customer's claim she was distracted by an oncoming vehicle); *see also Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 539 (S.C. Ct. App. 2000) ("A landowner generally does not owe a duty to warn others of open and obvious conditions on the property."). The basis for imposing liability on an invitor (here a merchant) is the invitor's "superior knowledge of the danger[.]" *Larimore* 531 S.E.2d at 540. "If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *Id.* (quoting *Breeden v. Hardy Corp.*, 562 So. 2d 159, 160 (Ala. 1990)). "[T]he degree of care required . . . is commensurate with the circumstances involved, including the age and capacity of the invitee." *Id.* at 539-40 (finding homeowner was not liable for open and obvious condition which caused contractor's injury).

South Carolina recognizes an exception to the general rule that there is no duty to warn of an obvious danger where "the [land]owner should anticipate that the invitee will nevertheless encounter the condition, or that the invitee is likely to be distracted." *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 362, 362 (S.C. 1991) (requiring jury instruction on exception where restaurant patron was injured when he tried to sit on a barstool with a missing top and manager admitted (1) the top was missing for over two months, (2) he could not explain why a warning sign that had been present was removed, and (3) many of the "regular customers were senior citizens

who customarily backed up to the stools in order to sit down"). *Callander* expressly adopts Restatement (Second) of Torts § 343(A), which provides a possessor of land "is not liable to his invitees for physical harm caused to them by any . . . condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*." Restatement (Second) of Torts § 343(A) (1965) (emphasis added).

Two subsequent decisions of the South Carolina Supreme Court provide guidance as to the reach of this exception. In *Meadows v. Heritage Village Church*, 409 S.E.2d 349 (S.C. 1991), the court considered a claim by a hotel patron who slipped on wet grass when walking from the parking lot to the hotel. The court held the exception did not apply because the evidence did not support a finding the hotel "could reasonably have foreseen that [the patron] would choose to try to cross the wet grass instead of using one of the other ways back to the hotel." *Meadows*, 409 S.E.2d at 351. The court reached the opposite result in *Creech v. S.C. Wildlife and Marine Resources Dept.*, 491 S.E.2d 571 (S.C. 1997), a case involving a ten-foot fall from a dock where there was a safety rail on only one side of the dock and Creech fell from the other side. The court found the circumstances were more akin to those in *Callander* than *Meadows* because there "was ample evidence [the defendant] had been warned the lack of safety rails could present a danger to people fishing from the dock and could expose [the defendant] to potential liability." *Creech*, 491 S.E.2d at 575.

While Plaintiff may face an uphill battle at trial, the court finds genuine issues of material fact preclude summary judgment. A jury might, for example, find the condition of the bags

immediately after Plaintiff's fall evidences their condition prior to her fall.[5]  Coupled with Washington's statement to Plaintiff, this evidence may support a finding the hazard posed by the sandbags either was not open and obvious to a customer *leaving* the store or that CVS was on notice of the risk of harm despite the obviousness of the hazard.  Cox and Lizette's testimony could support the same conclusions.  Thus, there is evidence from which a jury could either find the risk posed by the sandbags was not open and obvious to a customer leaving the store or CVS was on notice of a risk of harm despite the obviousness.[6]

## CONCLUSION

For reasons explained above, CVS's motion for summary judgment is denied.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
March 27, 2017

---

[5]  Given the weight and nature of sandbags, a jury might conclude they would not likely have moved as a result of Plaintiff's fall.

[6]  It is of some note the sandbags were well below eye level, according to Plaintiff were around a "blind corner" from the perspective of a customer leaving the store, and apparently were not marked with orange cones or other eye-catching devices.

8